HALL, Judge.
Plaintiff brought this suit against defendant, an interstate motor freight carrier, for damages to a piece of “welded sculpture” which allegedly occurred during its transportation by defendant from New Orleans to Atlanta and return. Plaintiff prayed for $350.00 in damages plus a $50.00 statutory penalty under the provisions of LSA-R.S. 45:1097, 1098.
Trial on the merits resulted in a judgment in defendant’s favor dismissing plaintiff’s suit at his cost. Plaintiff appealed.
Plaintiff, a professional artist, specializing in the design and fabrication of “welded sculpture” was invited to enter one of his works in an art competition known as “Art Across America” to be held in Atlanta, Georgia, during February and March 1965 under the sponsorship of The Mead Corporation. In response to this invitation plaintiff on March 31, 1965 delivered a crate containing one of his “welded sculptures” to defendant for transport to the ex *279 hibition in Atlanta. The “sculpture” was not selected by; the art jury for further exhibition and was shipped back to plaintiff in New Orleans via defendant’s motor freight line. Plaintiff received the crated “sculpture” on April 30, 1965 and upon opening the crate discovered that the “sculpture” had been damaged. This suit followed.
According to the provisions of the printed invitation issued by The Mead Corporation to plaintiff and other artists, each artist entering the competition was required to place a selling price on his entry and the corporation was given the option of purchasing the entry at that price. Plaintiff put a price of $350.00 on his entry.
The following provisions of the invitation are material to the issues herein involved:
“ * * * Works which are not selected for regional or national exhibition will be returned within two weeks of the jurying * * *
* * * * * *
“.+. * * One additional collecting point for the works of art has been established to reduce the costs to the individual artist. It is
(Here follows the name and address of the defendant carrier)
If you wish to take part in this cooperative shipping arrangement, please deliver your work to the New Orleans Warehouse no later than March 31, 1965. An all-inclusive fee of $10.00 will cover (1) the shipment from New Orleans to Atlanta ; (2) the warehouse handling in Atlanta; (3) the return of the work to New Orleans. Complete the entry card for your work, attach the identification label firmly to the back of the work and deliver the work plus entry card and $10.00 fee to the warehouse * * *
* * * * * *
“ * * * The Mead Corporation will insure all works of art which have been accepted for exhibition during the period of exhibition and while in transit. Mead will bear no liability for other works which have been submitted. Artists may insure works at their own option * * *»
Plaintiff himself constructed a wooden crate into which he packed his entry and delivered the sealed crate to defendant’s warehouse on March 31, 1965 together with his check for $10.00 payable to The Mead Corporation, and received from defendant a receipt therefor. The receipt shows that the crate was to be shipped to “Art Across America” and states “ * * * This shipment is tendered and received subject to the terms and conditions of the company’s Uniform Bill of Lading * *
Not having been accepted for exhibition by the art jury in Atlanta the crate containing the entry was closed and reshipped to plaintiff at New Orleans via defendant’s van line. Upon its arrival in New Orleans defendant notified plaintiff that same would be delivered to him upon payment of a $3.50 premium for insurance. Plaintiff paid the $3.50 and received the crate. (This amount was later returned to him by defendant under the circumstances hereinafter related.) When plaintiff opened the crate he found that the “sculpture” had been damaged.
We shall not attempt to describe the “sculpture” except to say that it is in the so-called “modern style” and is made of second hand bolts and old fashioned flat nails and other pieces of metal. The main skeleton of the structure consist of bolts 18" or more in length welded together so that they branch out into an irregular flat shape. Welded to this skeleton are several fragile metal branches and to the branches flat nails have been welded so as to form various designs, some of the designs taking the form of rosettes. The nails are welded to the branches by their heads and prong out without any other support. The bolts which form the main skeleton of the structure are attached by bolts to a background of painted canvass stretched over plywood in such manner that a small space is left between the “sculpture” and the background. Ap *280 parently the background with the attached “sculpture” was made to be hung like a picture. No part of the “sculpture” itself touches the background, and the delicate and fragile branches stemming from the main skeleton together with their nail designs are unsupported except at, and'by, the welds. The entire -“sculpture”, except for its skeleton of long bolts,’ is extremely delicate and fragile and vibrates to the touch.
When plaintiff opened the crate upon its return to New Orleans he found that one of the branches of the “sculpture” was bent at the place where it is welded to the main skeleton and he also found that a couple of the rosette designs had broken off at their welds and that some of the nails had also broken off at their welds.
Plaintiff contends that defendant is liable for the damage both as a carrier and as an insurer. Defendant contends that it is not liable under either theory.
We shall first consider the defendant’s liability vel non as a carrier. As we have seen, plaintiff himself crated the “sculpture” and delivered the crate to defendant securely sealed and fastened with bolts. The crate was never opened or its contents inspected by defendant. Counsel for both parties assume that the top of the crate was removed by the art jury at Atlanta and also assume that the “sculpture” was in good condition when the crate was resealed by the art jury in Atlanta and delivered to defendant for return to plaintiff in New Orleans. They both assume therefore that the damage occurred on the return trip. Plaintiff testified that the crate itself was in good condition when he received it “except for the damages on the corner of the crate which might have indicated that it was dropped on the corner.” One of defendant’s representatives however testified that plaintiff made the affirmative statement to him that the crate itself was in good condition when received. Plaintiff testified that he did not recall making such a statement. We have inspected the crate and have found nothing to indicate to us that it had been dropped or roughly handled in any manner.
A careful review of the testimony and an inspection of the crate and its contents convinces us that the “sculpture” was. damaged, not from rough handling by defendant, but from the fact that it was not sufficiently and properly packed in the crate to withstand motor transport to and from Atlanta. While plaintiff did his inexpert best to pack the “sculpture” in the crate,, using foam rubber pads, we are of the opinion (as was evidently the Trial Judge) that it was not packed sufficiently and expertly enough to prevent movement and vibration of the very delicate and fragile branches, and their nail designs, and that the damage resulted from stress, movement, and vibration of the “sculpture” within the crate occasioned by ordinary handling and transportation. There is no showing of any negligence on the part of defendant.
Since the sealed crate was tendered to and received by defendant “subject to the terms and conditions of the company’s uniform bill of lading” and since defendant’s uniform bill of lading states that “carrier assumes no liability for any articles packed or unpacked by shipper, consignee or their agent” (emphasis supplied) we are of the opinion that defendant is not liable as a carrier in the instant case.
Plaintiff’s contention that defendant is liable to plaintiff to the same extent as an insurer would be is based upon the fact that defendant collected $3.50 from plaintiff to cover an insurance premium.
The facts are as follows :
Under the terms of the invitation issued to plaintiff by The Mead Corporation defendant’s office was named as a collection point for art entries from this section. Approximately fifty-six art objects with a total valuation of $26,000.00 were collected at defendant’s office for shipment to Atlanta. The entire collection was placed in one van by defendant and transported to Atlanta. Only four of the entries were selected by the art jury, the remaining fifty-two entries, with a total valuation of $25,000.00 were re *281 turned to New Orleans by defendant in one van.
Since The Mead Corporation had agreed to pay for insurance only on the entries -which the art jury might select for future exhibition and since defendant was unwilling to assume the risk of transporting twenty-five or twenty-six thousand dollars ■of art works to Atlanta and return without knowing how many entries would be selected, defendant insured the shipment for its full value (subject to a $1,000.00 deductible) and prorated the premium cost on the return shipment to each artist in proportion to the value of his exhibit. Plaintiff’s exhibit being valued at $350.00, his prorata ■of the premium amounted to $3.50 which edefendant collected before delivering the crate to him. Sometime later The Mead Corporation agreed to pay, and did pay, to defendant the entire cost of the insurance. Defendant in turn reimbursed each artist for the prorata of insurance cost paid by him. Defendant’s check for $3.50 was forwarded to, and received by, plaintiff but was never cashed by him.
Plaintiff contends in his brief that defendant agreed to buy insurance for the plaintiff and collected a $3.50 premium from him but never placed the insurance. He further contends that “the purchase of an insurance policy carrying a $1,000.00 deductible cannot be held to constitute an .agreement to insure a $350.00 object, for under no circumstances could the insurance ever become payable in view of the fact that the value of the object is far less than the amount of the deductible.”
We find no necessity for discussing whether defendant would be liable as an insurer had it agreed to procure insurance for plaintiff and failed to do so, for the record is completely bare of any proof that defendant agreed to procure any insurance whatever for plaintiff. There is no showing that plaintiff requested defendant to procure any insurance for him of any type whatever and no showing that defendant ever promised to do so. In fact when plaintiff delivered the crate to defendant nothing whatever was mentioned concerning insurance. The first and only mention of insurance was when defendant collected a prorata of the premium from plaintiff as a condition for releasing the crate to him upon its return to New Orleans. We are of the opinion that the insurance which defendant procured was taken out solely for its own protection, and that in fact it had no right to charge plaintiff for a prorata of the premium.
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by plaintiff-appellant.
Affirmed.